UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOLTA MEDICAL, INC., | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>)<br>) Case No. 19-cv-11600-DJC |
| LUMENIS, INC. and LUMENIS, LTD., | )<br>)<br>) |
| Defendants. | )<br>)<br>)<br>) |

# MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                          **April 14, 2020**

## I.    Introduction

Plaintiff Solta Medical, Inc. ("Solta") has filed this lawsuit against Defendants Lumenis, Inc. ("Lumenis U.S.") and Lumenis, Ltd. ("Lumenis Israel") (collectively, the "Lumenis Companies") alleging two counts of patent infringement in violation of 35 U.S.C. § 271(a) (Count I and III) and one count of indirect patent infringement in violation of 35 U.S.C. § 271(b) (Count II). D. 1. One of the defendants, Lumenis Israel, has now moved to dismiss for lack of personal jurisdiction. D. 14.[1] For the reasons stated below, the Court DENIES the motion.

---

[1] Lumenis Israel filed a motion for leave to file a reply to Solta's opposition, D. 25, with its reply brief attached, D. 25-1. Solta opposed it. D. 27. The Court ALLOWS the motion and has considered that reply brief, D. 25-1, in its resolution of the pending motion to dismiss. Lumenis Israel also filed a motion for notice of supplemental authority regarding its motion to dismiss, D. 31, with the supplemental authority attached, D. 31-1. Solta opposed this motion as well. D. 32. To the extent this motion sought leave to file supplemental authority, it is ALLOWED and the Court considered this authority, D. 31-1, in its resolution of the pending motion to dismiss, but

1

## II.     Standard of Review

In ruling on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without an evidentiary hearing, a district court must apply the prima facie standard of review.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  Under the prima facie standard, Plaintiffs must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. (citing United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)).  The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings.  Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  In doing so, the Court will "not credit conclusory allegations or draw farfetched inferences."  Ticketmaster, 26 F.3d at 203.  The Court is also required to "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted."  Mass. Sch. of Law, 142 F.3d at 34.

---

concludes that the case cited does not warrant a different outcome here.  To the extent this motion asks the Court to defer its decision on personal jurisdiction, it is DENIED.

### III. Factual Background

The following facts are taken from Solta's complaint, D. 1, Lumenis Israel's uncontroverted, sworn affidavits in support of its motion to dismiss, D. 15-1, Solta's opposition to Lumenis Israel's motion to dismiss, D. 21, and supporting exhibits, D. 22.

Solta is a Delaware corporation with its principal place of business in Hayward, California. D. 1 ¶ 2. Lumenis Israel is an Israeli corporation with its principal place of business in Yokneam, Israel. D. 1 ¶ 4. Lumenis Israel manufactures its surgical and aesthetic products in Israel, D. 22-9 at 44, and then sells its products through its wholly owned subsidiaries in six countries: the United States, China, Japan, India, Germany and Australia. D. 22-9 at 43. Lumenis U.S. is Lumenis Israel's wholly owned subsidiary in the United States. D. 15-1 ¶ 14. Lumenis U.S. is a Massachusetts corporation with its principal place of business in San Jose, California, D. 1 ¶ 3, Massachusetts is one of the states where Lumenis U.S. sells and markets its products, D. 1 ¶ 7.

Solta is the owner of the '594 Patent titled "Tissue Cooling Rod for Laser Surgery," D. 1 ¶ 11, and the '881 Patent titled "Tissue Cooling Rod for Laser Surgery," D. 1 ¶ 13. The '881 Patent is a continuation of the '594 Patent. D. 1 ¶ 13. The Lumenis Companies offer to sell and market three devices—M22, AcuPulse and Ultra Pulse—that, as Solta alleges, infringe on Solta's '594 and '881 Patents. D. 1 ¶¶ 15, 24, 31, 40, 62. Although the parties disagree as to which Lumenis entity did what in the sale of these products, as discussed further below, the allegedly infringing products—M22, AcuPulse and Ultra Pulse—are specifically identified as Lumenis Israel products in a Lumenis Israel SEC filing. D. 22-9 at 38-42. Lumenis Israel also applied for FDA approval to market the allegedly infringing products in the United States. D. 22-1; D. 22-2; D. 22-3; D. 22-4; D. 22-5; D. 22-6; D. 22-7; D. 22-8.

**IV.     Procedural History**

On July 24, 2019, Solta filed its complaint in this case. D. 1. Lumenis Israel has now moved to dismiss for lack of personal jurisdiction. D. 14. The Court heard oral argument on Lumenis Israel's motion and took the matter under advisement. D. 30.

**V.      Discussion**

    A.      **Personal Jurisdiction**

Lumenis Israel asserts that this Court lacks personal jurisdiction over it. D. 15 at 7-16. The parties agree that the Federal Circuit law applies when determining whether a district court may exercise personal jurisdiction over an accused infringer. D. 15 at 7; D. 21 at 5. "In order to establish personal jurisdiction in a patent infringement case over a non-resident defendant whose products are sold in the forum state, a plaintiff must show both that the state longarm statute applies and that the requirements of due process are satisfied." Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1319 (Fed. Cir. 2005). This Court's inquiry, therefore, begins with the Massachusetts long arm statute. SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017) (explaining that "prior to exercising personal jurisdiction over a nonresident defendant, a judge must determine that doing so comports with both the forum's long-arm statute and the requirements of the United States Constitution"). The Court's analysis of the Massachusetts long-arm statute "precede[s] consideration of the constitutional question" of due process. Id.

        1.     *The Massachusetts Long-Arm Statute*

Lumenis Israel in its reply brief argues that Solta has not carried its burden of establishing that this Court has personal jurisdiction pursuant to Massachusetts's long arm statute. D. 25-1 at 6-7. As this argument was raised for the first time in the reply brief, it is waived. See Noonan v.

4

Wonderland Greyhound Park Realty LLC, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (considering an argument waived when it was raised for the first time in the reply brief); see also Wills v. Brown Univ., 184 F.3d 20, 27 (1st Cir. 1999) (explaining that the purpose of a reply brief is "to counter the [opponent's] arguments, not to offer new theories of error for the first time").

Even assuming this argument is properly before this Court, Lumenis Israel has transacted business within the meaning of the Massachusetts long arm statute. Section 3(a) of the long-arm statute provides for personal jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." Mass. Gen. L. c. 223A, § 3(a). "[F]or jurisdiction to exist pursuant to § 3(a), therefore, the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must have arisen from the defendant's transaction of such business." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001) (citing Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994)).

The "transacting business" clause is construed "broadly." Shipley Co., Inc. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990). For example, courts have interpreted this provision to cover instances in which a defendant engages in "the purposeful and successful solicitation of business from residents of the Commonwealth." Tatro, 416 Mass. at 767. Lumenis Israel argues that it cannot be considered to have transacted business in Massachusetts because "Lumenis Israel does not manufacture, use, sell, or offer to sell any products in Massachusetts or anywhere else in the United States, including the accused products." D. 15 at 6-7. Lumenis Israel contends that it "does not import products into Massachusetts or the United States." D. 15 at 7. Rather, Lumenis Israel asserts, its wholly owned U.S. subsidiary, Lumenis U.S., is responsible for all U.S. activities related to the accused products in this action. Id. In sum, Lumenis Israel asserts that it has no

5

relation to Lumenis U.S.'s actions in Massachusetts and therefore cannot be subject to jurisdiction here. Indeed, ownership of a Massachusetts subsidiary is, on its own, insufficient to assert Massachusetts jurisdiction. See Andresen v. Diorio, 349 F.3d 8, 12 (1st Cir. 2003) (explaining that the fact that a "parent has 'overall financial and policy control' over its subsidiary is not enough [to assert jurisdiction under Massachusetts's long arm statute] . . . [because] [s]uch control is inherent in ownership and, if overall control were sufficient, every parent would be present wherever a wholly owned subsidiary was present in a state"). The Lumenis Companies need not be in a formal agency relationship to conclude that both are transacting business in the commonwealth for the purposes of § 3(a). See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002) (noting that parties need not be in a formal agency relationship for the contacts in the forum to be attributable to the out of forum party). Moreover, the record controverts the notion that Lumenis Israel's relationship with its U.S. subsidiary is limited to mere ownership.

In an April 2, 2015 20-F filing with the SEC, Lumenis Israel states that it provides "practical basic and advanced technical training and certification of field service engineers for practically all of [their] products," and operates "communications centers in each of the regional centers for our four geographic sales and marketing areas." D. 22-9 at 44. Even assuming Lumenis U.S. is responsible for some or all of these support and training actions, it appears that Lumenis Israel is more involved in the marketing and sale of the infringing product than it claims. For example, Lumenis Israel applied for FDA approval to market the allegedly infringing product in the United States.[2] D. 22-1; D. 22-2; D. 22-3; D. 22-4; D. 22-5; D. 22-6; D. 22-7; D. 22-8. Solta

---

[2] Lumenis Israel contends that the FDA filings are irrelevant to this patent suit and, therefore should, not be considered by this Court. D. 25-1 at 8. Regardless of their relevance to the underlying litigation, they are relevant to the present inquiry here: Lumenis Israel's role in the

also contends that Lumenis Israel is the owner of patents to the allegedly infringing products, D. 22-10, which Lumenis Israel does not dispute.[3] Thus, contrary to Lumenis Israel's contentions, it appears that Lumenis Israel had an ongoing and collaborative relationship with its Massachusetts subsidiary, Lumenis U.S., to market and offer for sale Lumenis products throughout the United States, including Massachusetts.[4] These facts—that Lumenis Israel jointly marketed and sold products in Massachusetts, with its Massachusetts wholly owned subsidiary all using the same name: Lumenis—constitutes transacting business under Massachusetts's long arm statute. See Systemation, Inc. v. Engel Indus., Inc., 992 F. Supp. 58, 60 (D. Mass. 1997) (ruling that defendants exclusive dealership agreement with a Massachusetts corporation to sell its goods in six New England states and deriving profits therein was sufficient to have "transacted business" within the meaning of the Massachusetts long arm statute); see Massachusetts Inst. of Tech. v. Shire PLC, 13-cv-10020-MLW, 2014 WL 404696, at *4 (D. Mass. Feb. 2, 2014) (ruling that the parent company's involvement in the marketing and distribution of allegedly infringing products rendered it subject to jurisdiction under the Massachusetts long arm statute); Rooney v. Walt Disney World Co., 02-cv-12433-GAO, 2003 WL 22937728, at *3 (D. Mass. Nov. 25, 2003) (explaining that "solicitation of business from Massachusetts residents, through the joint activities and agency of

---

marketing and sale of the allegedly infringing products in the United States and, specifically, Massachusetts.

[3] Lumenis Israel asserts that the ownership of its patents here is also irrelevant to the inquiry, because, Lumenis Israel argues, its patents are not at issue is this case. D. 25-1 at 8. The fact that Lumenis Israel owned the U.S. patents to the allegedly infringing products, however, is relevant to the issue of how much, and to what degree Lumenis Israel was involved in the marketing, sale and distribution of its products in the United States and, specifically, Massachusetts.

[4] Solta alleges in its complaint Lumenis distributes, markets and sells products in Massachusetts. D. 1 ¶ 7. Lumenis Israel does not appear to dispute this as to Lumenis U.S., D. 15-1 ¶ 14, and the Court credits this allegation as it must on a prima facie determination. See Mass. Sch. of Law at Andover, Inc., 142 F.3d at 34.

its sister corporations" was sufficient to satisfy the requirements of the Massachusetts long arm statute).

The second prong requires a showing of "but for" causation. Tatro, 416 Mass. at 771 (concluding that § 3(a) had been satisfied where "[b]ut for the defendant's solicitation of business in Massachusetts, and its agreement to provide the plaintiff with hotel accommodations in Anaheim, California, the plaintiff would not have been injured in a room of the hotel"). This test is met here: but for Lumenis Israel's joint endeavor with its wholly owned subsidiary to market and sell products in the United States, and Massachusetts, Solta would not have a patent infringement claim regarding those products. See Systemation, Inc., 992 F. Supp. at 60.[5]

    2.    *Due Process*

"For jurisdiction to be proper, constitutional requirements of due process must be met." Shipley Co., Inc., 728 F. Supp. at 822. The due process clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).

There are two types of personal jurisdiction to consider in the constitutional analysis: general and specific. Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). Solta does not press general jurisdiction here, Tr. 14:6-9, and thus this Court's review focuses on specific jurisdiction. Specific jurisdiction exists "when the cause of action at issue 'arises out of or relates to'" the defendant's contacts with the forum state, "even if those contacts are 'isolated and sporadic.'" Red Wing Shoe Co. Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed.

---

[5] Given this analysis, the Court does not reach Solta's other arguments for personal jurisdiction under the long arm statute including theories under §§ 3(c) and 3(d) of the statute.

Cir. 1998) (citing Burger King Corp., 471 U.S. at 472-73). Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Cossaboon, 600 F.3d at 31 (citation omitted). The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico, 563 F.3d 1285, 1297 (Fed. Cir. 2009). The plaintiff bears the burden of proof on all three elements. See Rodriguez v. Samsung Electronics Co., Ltd., 827 F. Supp. 2d 47, 50 (D. Mass. 2011).

a) Relatedness

The relatedness inquiry asks whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009). "The Federal Circuit's interpretation of relatedness is more permissive than the 'proximate cause' or 'but for' analyses used in other circuits." Nuance Commc'ns, Inc. v. Omilia Nat. Language Sols., Ltd., 19-cv-11438-PBS, 2019 WL 6841796, at *4 (D. Mass. Dec. 16, 2019) (citing Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1337 (Fed. Cir. 2008)).

An attempt to market allegedly infringing products in Massachusetts satisfies this standard. Nuance Commc'ns, Inc., 2019 WL 6841796, at *4 (applying Federal Circuit law and holding that the relatedness prong was satisfied where the defendant had attempted to market infringing products in Massachusetts); see Hilsinger Co. v. FBW Inv., 109 F. Supp. 3d 409, 421 (D. Mass. 2015) (holding that the relatedness prong was satisfied where the plaintiff alleged "that defendant infringed on its trademark by selling its products in Massachusetts"). Accordingly, here, where Lumenis Israel jointly endeavored with its wholly owned, Massachusetts subsidiary, Lumenis U.S., to market and sell an allegedly infringing product in Massachusetts, the relatedness prong is

satisfied. See id.; see also Massachusetts Inst. of Tech, 2014 WL 404696, at *6 (explaining that because the Federal Circuit's relatedness prong is less stringent than Massachusetts's long-arm requirement, for the reasons stated in the long arm analysis, the plaintiffs have also satisfied the relatedness prong).

b) Purposeful Availment

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Avocent Huntsville Corp., 552 F.3d at 1329. Purposeful availment turns on voluntariness and foreseeability. "Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant himself." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 36 (1st Cir. 2016) (internal citations omitted). "Foreseeability requires that a defendant's contacts with the forum state are 'such that [the defendant] could reasonably anticipate being haled into court there.'" Id. (alteration in original) (quoting Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007) (internal quotation marks omitted)).

Lumenis Israel relies upon Bristol Myer-Squibb Co., to argue that Lumenis Israel has not purposefully availed itself to the forum under this standard. D. 25-1 at 8-9 (citing Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., __U.S.__, 137 S. Ct. 1773, 1783 (2017)). Indeed, the Supreme Court held in Bristol Myers-Squibb Co. that the "bare fact" that a company "contracted with a California distributor is not enough to establish personal jurisdiction in the State" where there was no tracing the offending product to that distributor. Bristol-Myers Squibb Co., 137 S. Ct. at 1783. "'[S]omething more' such as special state-related design, advertising, advice, marketing, or anything else," is required to indicate that the defendant

purposefully availed itself to the forum state. J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 889 (2011) (plurality opinion).

Here, unlike in Bristol-Myers Squibb Co., there is no issue tracing the offending products to the wholly owned Massachusetts distributor with which Lumenis Israel contracted. Lumenis Israel sold its products to Lumenis U.S., a Massachusetts corporation, who then allegedly sold and marketed the allegedly infringing products in Massachusetts. D. 22-9 at 43-44. Thus, unlike in Bristol-Myers Squibb Co. Lumenis Israel's relationship to Massachusetts is directly related to the offending product. See State Nat'l Ins. Co. v. Textron Aviation, Inc., No. 17-1077-JWB, 2018 WL 4111845, at *3 (D. Kan. Aug. 29, 2018) (finding personal jurisdiction because, unlike in Bristol-Myers Squibb Co., there was no missing link: the defendant sold its allegedly defective product to the Kansas company which then was installed in an aircraft that was sold in Kansas and thus was "directly related to the claims at issue in this case").

In any event, more purposeful action is present here. In Polar Electro Oy v. Suunto Oy, 829 F.3d 1343 (Fed. Cir. 2016), the Federal Circuit found that the defendant Suunto, a Finish corporation, had purposefully availed itself to the state of Delaware where "Suunto entered into a distribution agreement with ASWO, its sister company, to market and distribute Suunto products in the United States." Id. Under that agreement, Suunto was obligated to "supply its products from Finland and provide outbound logistic services, including 'incoming order administration, preparing export documents, invoicing the order, picking and packing the ordered goods and coordinating the freight to the destination specified by' ASWO." Id. The Federal Circuit noted that "this is not a case where a small manufacturer sells its products to an independent distributor, who then distributes the products to consumers across the nation" and held that Suunto had purposefully availed itself to the United States. Id. at 1351.

Lumenis Israel asserts that this case is distinguishable from Polar Electro Oy because its contacts are singular to a manufacturer-supplier relationship. D. 25-1 at 10. Lumenis Israel, however, like the defendant in Polar Electro Oy, manufactures products in a foreign country and then uses its wholly owned subsidiary, a corporation incorporated in the forum, to sell its products in the forum. D. 22-9 at 43-44. Further, as discussed above, Lumenis Israel applied for FDA approval to market the allegedly infringing products throughout the United States. D. 22-1; D. 22-2; D. 22-3; D. 22-4; D. 22-5; D. 22-6; D. 22-7; D. 22-8. Thus, as in Polar Electro Oy, this is not such a instance where a manufacture ships its products to an independent distributor, rather Lumenis Israel "acted in concert" with its Massachusetts subsidiary to facilitate the marketing and sale of an allegedly infringing product throughout the United States—including Massachusetts. 829 F.3d at 1350-51.

It cannot be said that Lumenis Israel's contacts with Massachusetts were "random, fortuitous or attenuated," Burger King Corp., 471 U.S. at 475 (quotations omitted), where it endeavors, to sell its products to its Massachusetts wholly owned subsidiary, and jointly engages in a marketing effort to sell these products, see Graphics Props. Holdings, Inc. v. ASUS Comput. Int'l, 70 F. Supp. 3d 654, 663 (D. Del. 2014) (asserting personal jurisdiction over a Taiwanese corporation with its principal place of business in Taiwan whose products were designed and manufactured in Taiwan or China and does not directly sell in the U.S. but instead sells its products to a wholly owned subsidiary who then sells its products to another wholly owned subsidiary). As such, the purposeful availment requirement is satisfied here. See Polar Electro Oy, 829 F.3d at 1350-51; see also Enzo Life Scis., Inc. v. Hologic Inc., 16-cv-894-LPS-CJB, 2018 WL 4660355, at *6 (D. Del. Sept. 26, 2018) (where, applying Federal Circuit law, the court asserted personal jurisdiction over the defendant because the defendant formed a wholly-owned subsidiary

12

incorporated in Delaware to specifically serve the market, and sold the accused products in the United States).

### c) Reasonableness

Finally, the Court considers reasonableness for the Defendant. The reasonableness inquiry is based on a balancing of the following "Gestalt factors": "1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." Synthes (U.S.A.), 563 F.3d at 1299. "The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 717 (1st Cir. 1996). The factors "may serve to 'establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than otherwise would be required,' but they may also establish a 'compelling case' that would 'render jurisdiction unreasonable' despite the presence of minimum contacts." Synthes (U.S.A.), 563 F.3d at 1299 (quoting Burger King Corp., 471 U.S. at 477).

Where the defendants activities were purposely directed at the forum and a claim for patent infringement arises out of those contacts, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda., 890 F.3d 995, 1001 (Fed. Cir. 2018) (quoting Burger King Corp., 471 U.S. at 477) (internal quotation marks omitted). No such compelling case has been made here.

Lumenis Israel argues that foreign nonresidents face a unique burden that should be given a significant weight in assessing the reasonableness of asserting jurisdiction across national

borders. D. 25-1 at 14. While acknowledging this burden, the Federal Circuit has recognized that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome" and thus found, as this Court finds here now, that the second and third factors outweigh the foreign defendant's burden in domestic alleged infringement suits. Synthes (U.S.A.), 563 F.3d at 1299. See M-I Drilling Fluids UK Ltd, 890 F.3d at 1002-03. As to the fourth and fifth factors, Massachusetts has an interest in discouraging injuries that occur within its boundaries—including patent infringement. N. Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1580 (Fed. Cir. 1994) (noting that the forum "clearly has an interest in prohibiting the importation of infringing articles into its territory"). Moreover, to the extent that these factors are "concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy," Synthes (U.S.A.), 563 F.3d at 1300, they do not otherwise weigh in favor of any forum other than this one where neither of the parties have identified an alternative forum suitable for this case. Considering the balance of these factors, the Court concludes that the exercise of personal jurisdiction over Lumenis Israel is reasonable here.

### 3. Jurisdiction under Fed. R. Civ. P. 4(k)(2)

Solta argues, in the alternative, that this Court could exercise jurisdiction over Lumenis Israel pursuant to Fed. R. Civ. P. 4(k)(2). D. 21 at 15-17. Rule 4(k)(2) allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." Synthes (U.S.A.), 563 F.3d at 1293-94. As this Court has already determined that it has jurisdiction over the defendant pursuant to Massachusetts's long arm statute and the requirements of due process, it need not reach the issue of jurisdiction under Rule 4(k)(2).

14

## VI. Conclusion

For the foregoing reasons, the Court DENIES Lumenis Israel's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), D. 14.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge