# EXHIBIT A

**Rithika Kulathila**
617 210 6874
rkulathila@mintz.com



MINTZ

One Financial Center
Boston, MA  02111
617 542 6000
mintz.com

April 2, 2021

**VIA E-MAIL**

Ian B. Brooks
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531

Re:   *Solta Medical, Inc. v. Lumenis, Inc. et al.*, No. 1-19-cv-11600 (D. Mass.).

Dear Ian:

This letter addresses the concerns raised in your March 17, 2021 letter and also the numerous discovery issues disputed by the parties over the past several months.

### I.   Solta Interrogatory Nos. 6, 9 & 10 and Request Nos. 22, 26, 30, 32, 33, 35-38, 41, 42, 43, 44, 45, 65, 75, 76 and 77

Solta mischaracterizes Lumenis's supplemental interrogatory responses. First, Lumenis supplemented its responses to Interrogatory Nos. 3 and 10 on January 7, 2021. Second, Lumenis objected to Interrogatory No. 6 on November 6, 2020, notably that the deadline for such a response is already set by the court's local rules. Please explain why you think Solta is entitled to a response before the date as set by the Court. Third, with respect to Interrogatory No. 9, Solta has not explained why identification of "each customer of any Accused Product" and "the number of each Accused Product such customer acquired," is relevant to its inducement claim. Solta's request is overly broad and not proportional to the needs of the case. *See Indacon, Inc. v. Facebook, Inc.*, No. SA-10-CA-966-OLG, 2012 WL 12538968, at *9 (W.D. Tex. Feb. 14, 2012) ("However, Interrogatory 14 seeks information pertaining to the identity of every 'customer[ ], individual[ ], or entit[y] to whom sales have been made or from whom revenues and/or profits have been generated or earned in connection with the Accused Products.' In addition to being overbroad, this interrogatory does not appear to be reasonably calculated to lead to the discovery of admissible evidence." (citation omitted)). Lumenis is willing to meet and confer on the scope of the Interrogatory and how the Interrogatory relates to Solta's inducement allegation. Fourth, Lumenis intends to supplement its response to Interrogatory No. 10 to provide sales data, accordingly.

With respect to Request Nos. 22, 26, 30, 32, 33, 35-38, 41-45, 65 and 75-77, Lumenis objected to the requests as overly broad since the requests were not limited to a relevant time period, and were unduly burdensome in scope. That said, Lumenis is willing to meet and confer on the scope of these requests.

**MINTZ**

Ian B. Brooks
April 2, 2021
Page 2



## II. Solta Request Nos. 4 and 5

With respect to samples, Solta mischaracterizes the dispute. Initially, Solta asked "whether Lumenis will ship the samples to McDermott's Washington, DC office." Lumenis then responded on September 21, 2020 that "[w]e will be able to host the inspection in our Boston office" and asked Solta to "identify some potential dates in October and November [2020] that would work for your team for the inspection[.] Once we have the dates, we will finalize the details." Later that day, Solta responded to Lumenis' proposal by stating that "MWE has an office in Boston. Are you able to make the samples available to us there?" Shortly thereafter, on September 23, 2020 Lumenis responded by asking, "What potential dates work for your team for the inspection? We need some lead time to ensure that the samples are available." Solta requested that samples be produced at your office in Boston and provided no authority or reasoning as to why Lumenis must make its products available for inspection outside of its possession, custody and control contrary to the Federal Rules of Civil Procedure, and why Solta is unable to inspect these devices at the Mintz Boston office.

As Lumenis previously stated on October 12, 2020:

> Lumenis has agreed to make samples available to Solta for inspection and will allow Solta to inspect the samples in private. *See Ramos v. Carter Exp.*, 292 F.R.D. 406, 411 (S.D. Tex. 2013) (denying Defendant's request to send samples to a place of Defendant's choosing). Solta has identified no reason that it cannot inspect and perform any tests that need to be performed at Mintz' office. In particular, Mintz has developed Covid 19 procedures for allowing third parties to enter its offices. The only requirement we have for the inspection is that to the extent Solta intends to test the operation of the products, we ask that Solta identify the individual who will be conducting the tests and what experience they have with the accused systems. This is for Solta's own safety as these products are dangerous.

Solta simply responded that "[w]e are looking into what we can do regarding inspection of samples, but in light of current restrictions in Massachusetts for out-of-state travelers, we are unable to confirm a timeline for inspection at this time" on October 20, 2020. Solta then waited approximately three months to raise this request again on January 19, 2021. However, this time Solta demanded samples not only be sent to an MWE office (despite seemingly acquiescing to a review at Mintz' office), but that the samples be sent to Washington D.C. Then, less than a week later, on January 25, 2021, Solta once again pivoted and requested Lumenis to send samples to a Solta facility in Bothell, Washington state. The foregoing clearly demonstrates you *have* received responses to your past correspondence, and that any failure to iron out the details involved in providing samples is the result of Solta's ever-changing position on such details.

**MINTZ** 

Ian B. Brooks
April 2, 2021
Page 3

Lumenis nevertheless remains willing to make samples of the accused products available for inspection in accordance with the Federal Rules of Civil Procedure, not in accordance with Solta's preferences. We have informed you that the logistics of making the products available are far from simple. Any product that is made available for inspection will be one that is out in the field. As you know, Solta has the option to order and purchase its own samples of these products, but has refused to do so. Accordingly, should Solta indeed wish to inspect the accused products, it will be on Lumenis' terms and as they can be made available. We suggest the parties meet-and-confer regarding any further details.

### III.     Solta Request No. 31

With respect to source code, this is not the first time that Solta has been made aware that Lumenis objected to producing source code. Solta has been aware of Lumenis' objection to providing source code since at least November 6, 2020 and did not follow-up on the matter. Instead, on January 19, 2021, Solta demanded that "in light of Lumenis's Preliminary Non-Infringement Contentions," which were served on September 8, 2020, Lumenis must produce source code for each Accused Product.

As Lumenis previously stated, production of source code is unduly burdensome. Your prior conjecture that "it should be available at the push of a button" only demonstrates a lack of knowledge of the technology. Moreover, Lumenis' extensive production of technical documents and drawings for each Accused Product alleviated the need for source code.[1] On January 27, 2021, in light of FRCP 26(b)(1)'s requirement of proportionality and "whether the burden or expense of the proposed discovery outweighs its likely benefit," Lumenis requested that Solta provide an explanation as to why these technical documents are insufficient and why source code is necessary. To date, Solta has not provided a reason, suggesting that it in fact does not have one.

Regardless, and for your information, Solta ignores the enormous cost and burden of producing source code, particularly located overseas and during a global pandemic. First, Lumenis personnel must review, analyze and pull the associated source code for each of the UltraPulse, AcuPulse and ResurFx products. Second, Lumenis personnel must review the code from the relevant period to ensure all the code regarding the functionality of the UltraPulse, AcuPulse and ResurFx has been located. Third, once the review of the source code is through, Lumenis personnel must put the source code on a computer by having the code for each product professionally loaded onto a computer in Israel. Fourth, the computer in Israel must be shipped to the United States in compliance with Israeli law, which may include undergoing further review and restrictions as encryption source code is often export controlled. Fifth, once the computer is finally able to be shipped to Mintz, a Mintz employee must be present in the office to receive the computer and

---

[1] While Solta previously complained that Lumenis's additional technical production runs afoul of Local Rule 16.6(d)(4)(A), Solta must know that the Local Rule requires a production of "[technical] [d]ocument sufficient to show" the operation of the accused products and not a completed production of technical documents.

**MINTZ**



Ian B. Brooks
April 2, 2021
Page 4

procure additional licenses necessary for the review tools. And of course, all of this must occur under the circumstances of COVID-19 and fully-remote workplaces.

The Protective Order also expressly states that "the Source Code Computer(s) may only be located in a secured room ("Source Code Room") at the offices of the Producing Party's lead outside counsel [...]," which in this case would be Mintz's Boston office. As Solta recognized, the Protective Order "allows for the source code to be provided at the offices of the producing party 'or at some other mutually agreeable location.'" McDermott's Washington, D.C. office was never a "mutually agreeable location" as Lumenis objected to the production of source code to begin with on November 6, 2020. While Solta "ha[s] found this approach workable in other cases, and I propose[d] it here," this approach does not comply with the Protective Order in this case. Nor does the Protective Order address remote source code review.

### IV. Lumenis Request Nos. 1–5, 7, 10–13, 15–17, 23–24, 26, 35–37, 39, 41, 42, 55, 56, 61, 63–65, 69, 70, 72, 78–83, 86, 89 and 91

Solta failed to produce documents responsive to Request Nos. 1-5, 7, 10-13, 15-17, 23, 24, 26, 35, 39, 41, 42, 64, 65, 69, 70, 72, 78-83, 86, 89 and 91, relating to Solta's corporate organization, patent validity, other legal proceedings, document retention and organization, and various other subjects necessary for Lumenis's defenses. Solta stated it "will conduct a reasonable search for and, to the extent located, will produce relevant, non-privileged responsive documents." Solta has not produced documents responsive to these Requests. Solta's "larger production" in February indeed related primarily to advertising and promotional materials for Solta's products and services, and journal articles about Solta's products. Solta should therefore promptly produce documents responsive to these Requests.

With respect to Request No. 35, Solta has still not produced its agreement with Sciton, Inc. as cited to in Solta's response to Interrogatory No. 9. Solta should produce this license immediately. Understanding that you were litigation counsel for Solta in this matter, you clearly have access to this agreement and are continuing to intentionally withhold it. We intend to discuss why this has not yet been produced at the parties' meet-and-confer and finalize this dispute for Court invention if Solta refuses to produce this agreement by the end of next week.

### V. Lumenis Request Nos. 38, 59, 87 and 90

In your January 29, 2021 letter, you agreed to produce "license agreements involving the Asserted Patents" to Lumenis in "due course" with respect to Request Nos. 38 and 59. But for documents relating to these Requests, namely "royalties for technologies or patents related to laser treatment products and/or technologies," Solta stated that it will not produce documents because "they are not relevant to any claim or defense and proportional to the needs of the case, overly broad, and unduly burdensome, and Solta is unaware of any bases for needing to search for and produce additional documents." But Solta contends that it is entitled to a royalty based on Lumenis' alleged infringement. Therefore, comparable agreements and documents relating to the patents and

**MINTZ**

Ian B. Brooks
April 2, 2021
Page 5



technology are relevant in determining the appropriate royalty rate. Additionally, Solta's reliance on *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1441 (D. Del. 1989) is misplaced as the interrogatory in that case was far broader than Lumenis's Requests here, as it concerned "all patents and patent applications owned by defendant, as well as all licenses it has purchased or issued" whereas Lumenis limited its requested to "technologies or patents related to laser treatment products and/or technologies," as Solta noted in its letter.

You also stated that Solta will not produce documents in response to Request Nos. 87 and 90 because they concern "patents and patent families that are not at issue in this litigation." Request No. 87 properly seeks "license agreements, settlement agreements, covenants not to sue, and negotiations regarding the same, **relating to technology and/or one or more patents which were part of the Fractional Technology Open Patent Program,**" and Request No. 90 properly seeks "income or value received by or paid by Plaintiff concerning any patents or patent families that comprised the **Fractional Technology Open Patent Program**." These documents are relevant because Solta contends that it is entitled to a reasonable royalty. Indeed, comparable agreements and documents relating to the patents and technology is relevant in determining the appropriate royalty rate. Solta should therefore promptly produce documents responsive to these Requests.

### VI.     Lumenis Request Nos. 48, 49, 53, 60, 73 and 74

You also stated in your January 29, 2021 letter that Solta will not produce documents relevant to Request Nos. 48, 49, 53, 60, 73 and 74 because these documents relate to "Solta's products, which are not at issue in this litigation." Yet Solta contends that it is entitled to lost profits based on Lumenis' alleged infringement. Therefore, documents relating to Solta's products are relevant to Solta's lost profits damages theory. Solta's reliance on *Funai Elec. Co. v. Orion Elec. Co.* is inapposite as the document requests there concerned "communications between Funai and Orion, . . . and between Funai and any third-party 'pertaining to Orion or any Orion product'" that included communications relating to products that did not have the VCR components relating to the asserted patents. Solta should promptly produce documents responsive to these Requests.

### VII.    Lumenis Interrogatory Nos. 6, 8 and 9

Solta has yet to supplement its response to Interrogatory No. 6 regarding whether its products practice the asserted patents. This information is highly relevant to at least the parties' damages claims and defenses, and it belies reason that Solta does not know whether it practices its own patents. Surely it knows and is improperly withholding this information. Solta should supplement its response without delay. Solta has also failed to supplement its responses to Interrogatory Nos. 8 and 9. These interrogatories are also highly relevant to the parties' damages claims and defenses. Solta should supplement its responses immediately.

\*       \*       \*

**MINTZ**

Ian B. Brooks
April 2, 2021
Page 6



      We look forward to your prompt attention to our above concerns and to our receipt of Plaintiff's positions regarding the same. We also remain willing and available to meet-and-confer in good faith regarding any and all of the above issues and currently can be available on Tuesday, April 6, 2021 and Thursday, April 8, 2021.

      Respectfully submitted,

      /s/ *Rithika Kulathila*

      Rithika Kulathila